IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| SARA KAHLER, *individually and as next friend for KK, a minor*, and TYLOR KAHLER,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>    Defendants. | Case No. 23-cv-00300-DKW-WRP<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT** |

Defendant United States of America moves to dismiss the Complaint on the ground that Plaintiffs did not submit their claims to an administrative agency within two years of the accrual of the same, as required under the Federal Tort Claims Act (FTCA). Dkt. No. 13. Having reviewed the parties' briefing on this matter, at this early stage of the litigation, the United States asks too much. In particular, while the United States believes the Kahlers should have known of their claims within eight days of their child's alleged injuries, the Complaint paints a different factual picture−one which the Court must accept at this juncture. Therefore, for the reasons more fully set forth below, the motion to dismiss, Dkt. No. 13, is DENIED.

## BACKGROUND

### I.     The Complaint

Plaintiffs, Tylor Kahler (Tylor) and Sara Kahler (Sara), individually and as next friend for KK, a minor, (Tylor and Sara, collectively Plaintiffs), initiated this case with the filing of the Complaint on July 20, 2023.  Dkt. No. 1.  Plaintiffs allege the following facts:

Beginning in approximately December 2018, Plaintiffs consulted with the medical staff at Tripler Army Medical Center (Tripler), a United States Military Hospital, for the purpose of obtaining diagnosis, care, and treatment in connection with Sara's pregnancy, labor, delivery, and pre-and post-natal care of KK.  Compl. at ¶¶ 8, 15.

On May 21, 2019, Sara underwent a one-hour glucose test, with results indicating that gestational diabetes was developing.  *Id*. at ¶ 20.  On May 29, 2019, however, a three-hour glucose test was performed, with results within "normal limits."  No further testing for gestational diabetes was performed.  *Id*.

On August 31, 2019, Sara was admitted to the Tripler labor and delivery department.  *Id*. at ¶ 17.  At that time, Sara was roughly 40 weeks pregnant, in "active" labor, and experiencing "painful" contractions.  *Id*.  According to the Complaint, Sara's pregnancy was "complicated" by "obesity", an elevated one-hour glucose test, a right ovarian cyst, and positive "group B streptococcus."  *Id*. at ¶ 18.

The Complaint further alleges that maternal obesity is a "risk indicator" for an "unusually large" fetus and also makes it "difficult" for medical providers to determine the size of a fetus without an ultrasound. *Id*. at ¶ 19. Sara's doctors did not order an ultrasound to determine the size of her fetus. *Id*.

Upon delivery, KK weighed approximately 11 pounds. *Id*. at ¶ 22. According to the Complaint, the "standard of care requires a caesarian delivery for any baby of this size." A caesarian delivery was not an option offered to Sara, however. *Id*. KK's delivery was "complicated" by her "large size." *Id*. at ¶ 23. After KK's head was delivered, Tripler's medical staff had difficulty delivering KK's shoulders. In pulling KK out, the medical staff used "excessive force" that caused damage to KK's brachial plexus and compressed her carotid artery. *Id*.

After KK's birth, "advanced resuscitation measures" were needed, and she was transferred to a neonatal intensive care unit. *Id*. at ¶ 24. On day 8 of her life, KK suffered seizures and a brain MRI identified a stroke in her brain. KK's doctors opined in the medical records that the "likely cause" of the stroke was compression of the carotid artery during KK's birth. *Id*.

Plaintiffs were told that KK's condition was "a complication from her large birth weight, but that she would make a full recovery over time with therapy." *Id*. at ¶ 25. Plaintiffs were not told that (1) Tripler's medical providers should have determined the size of Sara's baby before the labor and delivery, (2) a caesarian

delivery should have been performed due to the size of KK, (3) the medical providers compressed KK's carotid artery during delivery, (4) the compressed carotid artery was the likely cause of KK's stroke and brain damage, and (5) the injury of KK's brachial plexus and compression of her carotid artery were caused by the use of "excessive force" during delivery. *Id*.

In Spring 2022, when KK was two and a half years old, Plaintiffs were advised that KK had a speech impediment that would likely be permanent, she would suffer "developmental delays" and "learning disabilities", and she had "permanent cognitive injuries…." *Id*. at ¶ 4. Plaintiffs were also advised at this time that KK "would probably never use her right arm/hand for her daily activities." In June 2022, Plaintiffs "saw news coverage of a medical negligence birth case" at Tripler, which caused them to "wonder" if there might have been medical negligence related to KK's birth. *Id*.

In the Complaint, Plaintiffs assert two claims against the United States of America (Moving Defendant) and numerous "Doe Defendants" who are unknown individuals and/or entities that "may be legally responsible for the Plaintiffs' injuries…." *See id*. at ¶ 9. Count I is for medical negligence, while Count II is for the negligent failure to provide informed consent.

## II. <u>The Motion to Dismiss</u>

The United States' motion seeks dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) due to an asserted failure to state a claim within two years of accrual. Dkt. No. 13-1 at 1. Moving Defendant argues that dismissal is appropriate because a claim accrues when a party should have discovered the injury and its cause, and, here, Plaintiffs knew of the injuries and their cause, at the latest, by September 8 or 9, 2019, when KK suffered seizures and an MRI identified a stroke in her brain.

In opposition to the motion to dismiss, Dkt. No. 16, Plaintiffs argue that their claims did not accrue until March 2022, *i.e.*, within two years of the filing of their administrative claim. Specifically, Plaintiffs argue that it was not until then that they knew KK had developmental delays, a speech impediment, and a permanent shoulder impairment. Plaintiffs further argue that their claims did not accrue in September 2019, as the Moving Defendant contends, because, at that time, their doctors said that KK would be "fine" and would recover in full, KK only needed physical therapy for her shoulder, and KK's seizures and stroke were caused by her weight, not as a result of the acts or omissions of Tripler medical staff. Plaintiffs also assert that they were never told, in September 2019, that KK's carotid artery had been compressed.

In reply, Dkt. No. 17, Moving Defendant reiterates that the cause of Plaintiffs' injuries was "K.K.'s vaginal delivery at her large birth size", that KK's "birth size" was known to Plaintiffs in September 2019, and, therefore, Plaintiffs' claims are untimely.  After reviewing the foregoing briefing, the Court elected to decide the motion to dismiss without a hearing.  Dkt. No. 18.  This Order now follows.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing

*Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id*. at 679.

## DISCUSSION

The United States seeks dismissal of the Complaint on the ground that the Kahlers did not file their administrative claim within two years of the claim's accrual. Moving Defendant premises this argument on the contention that the cause of the Kahlers' injuries was KK's "large birth size" and the Kahlers' awareness of that fact in 2019.[1] Review of the Complaint, however, reflects that this mischaracterizes or misconstrues Plaintiffs' claims and, thus, for the reasons discussed further below, the motion to dismiss is denied.

As an initial matter, both parties agree with the general legal framework for analyzing the issue of a claim's accrual under the FTCA. Specifically, the parties agree that a claim accrues under the FTCA when a party "discovers, or in the exercise of reasonable diligence should have discovered, the injury and its cause." Dkt. No. 13-1 at 1 (citing *Tunac v. United States*, 897 F.3d 1197 (9th Cir. 2018)); *see also* Dkt. No. 16 at 10 (citing *United States v. Kubrick*, 444 U.S. 111 (1979)).

---

[1] The United States does not contend that different accrual dates apply to Count I as compared to Count II. Therefore, the Court assumes for present purposes that Moving Defendant's accrual arguments apply equally to both claims.

Here, as mentioned, the United States argues that the cause of KK's (and, thus, Plaintiffs') injuries was KK's "large birth size"—something which was known to Plaintiffs at or near the time of KK's birth in September 2019. Dkt. No. 17 at 5; *see also* Dkt. No. 13-1 at 9. While the Court agrees that, as alleged in the Complaint, Plaintiffs knew about KK's large birth size at the time of her birth, *see* Compl, at ¶¶ 4, 25, and even that they had been told at or near her birth that KK's size was the "cause" of her injuries, *see id*., the United States ignores the Complaint's allegations that KK's birth size was *not* the actual cause of her injuries. Specifically, the Complaint alleges that the "likely cause" of KK's stroke and brain damage was the compression of her carotid artery. *Id*. at ¶¶ 24-25. The Court, therefore, disagrees with the United States' assertion that it has "adopt[ed]" Plaintiffs' allegations as pled. *See* Dkt. No. 17 at 2-3. Moreover, although the United States does not contend otherwise, the allegation that compression of KK's carotid artery "likely cause[d]" her injuries is sufficiently plausible at this stage of proceedings.

The only remaining question is whether the Kahlers, despite allegedly being told that the cause of KK's injuries was her birth size, should have, in exercising reasonable diligence, discovered that the cause was allegedly something else. In light of the allegations of the Complaint, the Court thinks not. Among other things, apart from being told that the cause was KK's birth size, the Complaint further

alleges that Plaintiffs were *not* told that medical providers should have determined KK's size before labor, that a caesarian delivery should have been performed, that medical providers used "excessive force" during the delivery, that the use of such force caused the compression of KK's carotid artery and injury to her brachial plexus, and that the compressed carotid artery was the "likely cause" of KK's stroke and brain damage.  Arguably, armed with one or more of these pieces of information, a person, in exercising reasonable diligence, may have discovered a different cause for KK's injuries or, at least, investigated further.  Here, however, Plaintiffs allege they were told none of this.  Instead, the Complaint alleges that Plaintiffs were merely told that KK's injuries were caused by her birth size and that KK would make a "full" recovery with therapy.  Compl. at ¶ 25.  Based upon these allegations, the Court does not find that the Kahlers should have known that KK's compressed carotid artery (or something other than her birth size) was the alleged cause of her injuries.[2]  *Cf. Arroyo v. United States*, 656 F.3d 663, 668-669 (7th Cir. 2011) (citing *Nemmers v. United States*, 795 F.2d 628 (7th Cir. 1986), and explaining that, in *Nemmers*, when a child's cerebral palsy was caused both by an "unusually difficult delivery" and actions taken by medical providers, the Seventh Circuit concluded that knowledge only of the former was insufficient to start the statute of limitations).

---

[2] For similar reasons, the Court disagrees with the United States' contention that the "affirmative defense" of statute of limitations "appears on the face" of the Complaint.  Dkt. No. 13-1 at 5.

## CONCLUSION

For the reasons set forth herein, the motion to dismiss, Dkt. No. 13, is DENIED.

IT IS SO ORDERED.

Dated: December 21, 2023 at Honolulu, Hawaiʻi.

Derrick K. Watson
Chief United States District Judge

Sara Kahler, et al v. United States of America, et al; Civ No. 23-00300 DKW-WRP; **ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**