IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SARA KAHLER, *individually and as next friend for KK, a minor*, TYLOR KAHLER,<br><br>          Plaintiffs,<br><br>     v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>          Defendants. | Case No. 23-cv-00300-DKW-WRP<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' EXPERT DR. PRINCE** |

Defendant United States of America moves to disqualify Dr. Lawrence Prince, one of two expert neonatologists retained by Plaintiffs, arguing that a "conflict of interest" exists between Dr. Prince and the neonatologist earlier retained by the government, Dr. William Rhine. Dkt. No. 70. Specifically, the government asserts that Dr. Prince "supervises" Dr. Rhine at Stanford Medicine Lucile Packard Children's Hospital, something which Dr. Rhine believes would pose a conflict "if he was required to testify against Dr. Prince." Plaintiffs oppose disqualification, asserting that Dr. Prince does not believe a conflict exists, he is not Dr. Rhine's direct employer, and they are merely "co-employees" of Stanford.

Having reviewed the parties' arguments in this regard, Plaintiffs' arguments miss the mark. Initially, Defendant asserts, and Plaintiffs do not contest, that a

court may prevent "conflicts of interest" by disqualifying an expert witness in order to preserve the "integrity of the justice system." Dkt. No. 70-1 at 4-5 (citing *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2000)). Plaintiffs, instead, simply argue that no conflict exists. Accordingly, for purposes of the present matter, if a conflict of interest exists, the Court *may*, but is not required to, disqualify Dr. Prince. In weighing such a decision, the Court keeps in mind that, generally speaking, parties should be allowed to select their own experts. *Stencel*, 174 F. Supp. 2d at 1083. The Court also considers any prejudice to either side. *Id*.

Having weighed these considerations, along with the arguments and facts presented, disqualification of Dr. Prince is appropriate here. In particular, while Dr. Prince may not personally believe a conflict exists, Plaintiffs have done nothing to rebut Defendant's assertions that Dr. Prince supervises Dr. Rhine and that Dr. Rhine believes he would be unable to testify against a person he considers his "boss". The fact that Dr. Prince may not be Dr. Rhine's employer is irrelevant. In addition, as Defendant points out in reply, even certain of Plaintiffs' own experts acknowledge that a conflict likely exists under similar, if not less demanding, circumstances. *See* Depo. Tr. of Dr. Carol Benson at 10:10-19 ("I may know a provider or somebody else who is already an expert on the case."),

Dkt. No. 89-1; Depo. Tr. of Dr. Amen Ness at 12:22-13:1 ("From people I know well or worked with, or institutions that know me because I've been there."), Dkt. No. 89-2; Depo. Tr. of Dr. Paritosh Khanna at 15:8-15 ("And if there are – there is direct criticism of a radiologist, I prefer to stay away from those."), Dkt. No. 89-3.

Further, and perhaps equally important, at least with respect to prejudice, is the timing of the parties' various retentions here. Notably, *Defendant* retained, reported, and disclosed Dr. Rhine *first*. Only *after* Dr. Rhine had issued an expert report did Plaintiffs decide to also retain not one, but two, experts in neonatology, including Dr. Prince. Dr. Prince, however, was not just any expert, but a doctor practicing in the *exact same* clinic or department as Dr. Rhine. And still further, Dr. Rhine, the unrebutted evidence shows, reports to Dr. Prince and is understandably reticent to take contrary positions. Plaintiffs, therefore, only have themselves to blame in now being required to go forward without Dr. Prince's services. Moreover, as stated, Defendant asserts, and Plaintiffs do not contest, that they have retained a second neonatologist. The Court, thus, does not find that Plaintiffs would be prejudiced by the disqualification of Dr. Prince.

This is more so because, although Plaintiffs appear to have retained a second neonatologist, the Court is prepared to give them some time to find another such expert, should they so choose. Specifically, Plaintiffs may have one (1) week

3

from entry of this Order to file a status report indicating whether they wish to retain an *unconflicted* expert in neonatology to replace Dr. Prince.  If Plaintiffs do not wish to do so, they may simply so state.  However, if Plaintiffs state their wish to pursue such an opportunity, the parties shall forthwith contact the assigned U.S. Magistrate Judge in order to develop a disclosure/discovery schedule for such an expert.  Such a schedule <u>must</u> fit within the parameters of the recently filed Rule 16 Scheduling Order (Dkt. No. 94), specifically, the motions-in-limine and trial deadlines.[1]  In other words, the Court will not permit further delay of the trial merely to allow Plaintiffs to retain and fully disclose another neonatologist.[2]

For these reasons, the motion to disqualify Dr. Prince, Dkt. No. 70, is GRANTED.

IT IS SO ORDERED.

Dated: August 20, 2025 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

Sara Kahler et al v. United States of America, et al; Civil No. 23-00300 DKW-WRP; **ORDER GRANTING DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' EXPERT DR. PRINCE**

---

[1] To the extent the Magistrate Judge believes it to be appropriate, the *Daubert* deadline for a neonatologist retained by Plaintiffs pursuant to this Order may mirror the motions-in-limine deadline in the Rule 16 Scheduling Order, *i.e.*, November 10, 2025.

[2] To be clear, this opportunity is, thus, precisely that.  It is <u>not</u> a guarantee that Plaintiffs will be able to call any newly-hired neonatologist at trial.